We'll hear argument now in the case of the United States v. Mason. Good morning, Your Honors. Stephen Shannon. Mr. Shannon. Thank you, Your Honor. Good morning, Your Honors. Stephen Shannon on behalf of Jonathan Mason. I've been appointed to represent him. I would respectfully suggest that Judge Wood, the sentencing judge in this case, abused her discretion. And I believe, without putting words in my learned counsel's mouth, that she would disagree with this, as exemplified by our briefing. I would say the wrinkle in this case on that aspect, the abuse of discretion, is that everyone was relying on the transcripts, rather than the actual testimony or findings of Judge Lee, who was the trial judge. But Judge Wood said that she was not just relying on Judge Lee's credibility finding. That she gave very thorough reasons. She did her own review. She didn't rely on just Judge Lee's finding. She didn't rely on just Mr. Wiltz's testimony. She looked at the plea declaration. She looked at other testimony. She looked at the wiretap. She looked at the audio video. She looked at the search of the home. And she came to the conclusion, based on looking at all of those factors and pieces of evidence, how can we find she abused her discretion? If I may go through those factors one by one, because that's really the heart of it, whether it's harmless or not. In terms of... Well, I think it's whether it's error or not. Error, clear error. Yeah. Thank you. Going through these factors that are enumerated in the sentencing guidelines, 3B1.1 in the application notes, the exercise of discretion, making authority. There's no question that Mr. Mason and others did exercise authority. That's in the plea declaration, and he has elocuted such and got credit for the third point on that. In terms of participation, there certainly were more than five or more co-conspirators, and he accepted responsibility and elocuted. Mr. Shannon, I'm sorry to interrupt you, but I just want to clarify. Is it your position that even if everything Wiltz said was truthful, that that would not be sufficient for the court to impose the enhancement? No. That's not my position. May I ask the court to repeat that, please? So I thought your argument was there's an error here because Judge Wood relied just on Mr. Wiltz's credibility, and there wasn't enough in the record to find him credible. But what I hear you starting to argue is that even if she did find, even if he was credible, there's not enough evidence in the record with his testimony to impose the enhancement. So I want to make sure I'm not misunderstanding you. Thank you for repeating, Your Honor. Yes, I believe that Judge Wood abused her discretion because she based his, Judge, Mr. Wiltz's, Derek Wiltz's credibility on her belief that Judge Lee found him generally credible. And I believe she did not give enough weight to Judge Lee's continuing statement as to the animus that one witness had. The reason I'm addressing the harmlessness or whether it was harmless, skipping right to the claim of a larger portion of fruits, I don't believe there's any evidence that Mr. Mason claimed a larger portion of the fruits. And the argument I presented at district court was that he certainly agreed that he was a manager leader, not an organizer, he was not an organizer leader, rather he was a manager supervisor. He certainly, in a sense, recruited Mr. Wiltz, who was actually a volunteer working for the government. And I would focus on that because it's set out in the application notes as background, that larger portion of, entitled to a larger portion of proceeds, I would say, I would argue that that's controlling in this part, in the sense whether or not it was taken into consideration sufficiently. May I reserve the rest of my time? Certainly, counsel. Thank you. Ms. Greenwald. Good morning, Your Honors. First, on the reliability or credibility finding by Judge Wood, the court did make an independent finding, not simply resting on Judge Lee's finding, and this court in Mendoza approved of just such a procedure, especially when thoroughly done and taking into account the bias that was pointed out and the benefit to Mr. Wiltz. Should it matter that the defendant didn't have the opportunity to cross-examine Mr. Wiltz? Not under this court's precedents. This court's precedents are clear that cross-examination by anyone is just one indicator of reliability and credibility, and this court has affirmed district court's findings of credibility where the out-of-court declarant was neither under oath nor cross-examined by anyone. Here, and we cite those cases in our brief, here the out-of-court declarant, in terms of sentencing, was under oath when he gave that testimony, was cross-examined by Pugh's counsel, and the very factors that defendant claims were impeaching were brought out during that cross-examination. There is no right to cross-examination, as Your Honors are well aware, at sentencing at all. So no, and certainly under, again, Mendoza, which is almost exactly on point, what this court said, and really in larger context, Your Honors, the courts are, this sentencing courts are repeatedly relying on fact-finder judgments by juries as well as by jurors, sorry, by jurists, repeatedly without any question. So the answer would be no, there is no problem with that at all, especially in a circumstance like here where the court balanced everything. It's not as though the court ignored the issues raised by the defendant. The court specifically confronted them and said, this witness's testimony is so corroborated, so detailed, that I independently, even in addition to Judge Lee's finding independently, find it credible. And then, you know, with or without Wiltz's testimony, the evidence that the defendant here was a leader organizer really was overwhelming. This was the defendant who was at the hub of the conspiracy. It was his home that everything went through. The Title III calls show everyone had to go through him, including Pew, and that, you know, he not only got drugs through Pew, he individually got those drugs through Twyman, determining how much he would pay for certain additives, determining what Twyman's cut would be in assisting him. He mixed the drugs. He coordinated the mixing of the drugs. He was right there with the distribution, which is shown not only by the Title III calls, the car stops, the searches, but also by the defendant's own admissions in his plea declaration. So unless the court has any questions or anything I can elucidate on, the government would respectfully rest on our brief and our argument today and ask that you affirm the defendant's sentence. Anything further, Mr. Shanin? Thank you. Thank you very much. Mr. Shanin, we appreciate your willingness to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.